

Molly A. Elkin
mae@mselaborlaw.com

November 9, 2021

**VIA ECF**
Hon. Nelson S. Román
United States District Judge
The Hon. Charles L. Bryant Jr.
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

      Re:    *Simmons, et al. v. The Standard Life Insurance Company of New York*;
             Case No. 7:21-cv-00243 (NSR); Renewed Request for Settlement Approval

Dear Judge Román:

      We represent the Plaintiffs in this Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") lawsuit. Consistent with this Court's October 22, 2021 Order denying the Parties' Joint Request for Settlement Approval, (Dkt. 36), and pursuant to the Court's June 22, 2021, Order (Dkt. 32), Plaintiffs respectfully submit this letter on behalf of all Parties renewing their request that the Court approve the Settlement Agreement ("Agreement") between Plaintiffs, Nakia Simmons, Michelle Smitherman, and Marlye Gorostiza ("Plaintiffs"), and Defendant, The Standard Life Insurance Company of New York ("Defendant" or "SNY") (collectively, "the Parties"), and to retain jurisdiction to enforce its terms.

      The parties respectfully re-submit the Settlement Agreement for the Court's consideration pursuant to *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206 (2d Cir. 2015) and *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599-600 (2d Cir. 2020). The signed Settlement Agreement (**Exhibit 1**), which includes as attachments, each Settlement Class Member's (defined below) damages amounts, which equal, on average (after the deduction of fees, costs, and service awards) **$12,643.90** per person with the maximum payment being **$18,219.76** (**Exhibit 1-A**), a proposed Settlement Notice (**Exhibit 1-B**), a proposed Reminder Notice (**Exhibit 1-C**)**,** and a Proposed Order (**Exhibit 1-D**) are submitted with this letter.

      The Court originally rejected the Parties' motion to approve the Settlement Agreement because a "review of the docket . . . reveals that this action has not involved protracted litigation" and because the Court found that Counsel's original request for settlement approval included only "scant affidavits in support of their request for attorney fees." (Dkt. 36). To address the Court's concerns, the Parties also submit the following documents in support of approval:

- **Exhibit 2** (Second Declaration of Plaintiffs' Counsel, Molly Elkin, with supporting detailed billing records);

November 9, 2021
Page 2

- **Exhibit 3** (Second Declaration of Plaintiffs' Counsel, Travis Hedgpeth with supporting detailed billing records);

- **Exhibit 4** (Second Declaration of Plaintiffs' Counsel, Jack Siegel with supporting detailed billing records);

- **Exhibit 5** (Declaration of Defendant's Counsel, James J. Oh, describing his substantial experience litigating wage and hour cases and the defense work performed on this case, attesting to the fact that the Settlement Agreement is the result of arm's-length negotiations and providing his opinion that Plaintiffs' lodestar is reasonable);

- **Exhibit 6** (Declaration of well-respected and experienced New York wage and hour attorney, Hope A. Pordy, affirming that Plaintiffs' Counsel's rates and hours are reasonable, that the percentage of the fund fee request is warranted, and that the settlement is an "excellent" result);

- **Exhibit 7** (Declaration of former Department of Labor labor and employment attorney, Kerry A. O'Brien, attesting to the important role of private attorneys general in enforcing wage and hour laws and describing the benefits they provide to low-wage and middle-income workers through contingency fee arrangements such as the one here which allows workers to defer fee payment until there is a successful outcome, as was achieved here);

- **Exhibits 8–10** (Declarations from Plaintiffs Nakia Simmons, Michelle Smitherman, and Marlye Gorostiza attesting to the hard work performed by their counsel, the excellent result achieved, the fee contracts they entered with Counsel to pay Counsel 40% of the recovery, and their *unequivocal* desire that the entire Settlement Agreement be approved as is, with 33.33% of the fund being paid to Plaintiffs' Counsel as set forth in the Settlement Agreement that they voluntarily signed and wholeheartedly support).

For the reasons set forth below, the Settlement is a fair and reasonable resolution to the Parties' *bona fide* dispute and should be approved.

## I. Claims Asserted and Procedural History

Plaintiffs filed this overtime pay lawsuit pursuant to federal and state law on January 12, 2021. (Dkt. 1). Plaintiffs and Settlement Class Members are 27 persons who were employed by SNY in New York as Short-Term Disability Benefits Examiners (or similar job title) who handled short-term disability claims at any time since January 12, 2015, through June 10, 2021, whom SNY classified as FLSA "non-exempt" ("Settlement Class Members"). Plaintiffs allege that Defendant failed to properly pay overtime compensation under the FLSA, 29 U.S.C. § 201 et seq., and the NYLL, and further allege that Defendant failed to provide accurate wage statements in violation of NYLL § 195. Specifically, Plaintiffs allege that they were suffered or permitted to work more than 40 hours a week without receiving overtime pay at one and one-half times their regular rates of pay for hours in excess of 40. Derivative of this claim is Plaintiffs' allegation that

as a result of Defendant's alleged failure to record and pay them for all hours of work, Defendant failed to provide Plaintiffs and Settlement Class Members with accurate wage statements. On February 24, 2021, Defendant filed its Answer denying Plaintiffs' claims and asserting affirmative defenses.

Following initial discussions about the scope of a proposed settlement class and Plaintiffs' claims and Defendant's defenses, on March 24, 2021, the Parties jointly moved to stay all deadlines so that they could focus their efforts on informal discovery and early settlement. (Dkt. 22). On March 25, 2021, the Court granted the Parties' Joint Motion to Stay all Deadlines to Facilitate Settlement Negotiations (Dkt. 24), and pursuant to a second joint request by the Parties, continued the stay to allow the parties to continue their settlement efforts.

Following the Court's Order, the Parties agreed upon a settlement class, selected a mediator, scheduled mediation, and exchanged documents relevant to workload and job duties. Defendant provided Plaintiffs with the payroll and schedule data for all 27 Settlement Class Members. Ex. 2, Second Elkin Decl. ¶¶ 23, 36. Plaintiffs' Counsel thoroughly analyzed the merits of the case and the value of Plaintiffs' and Settlement Class Members' claims during the prosecution of this action. *Id*. ¶¶ 23, 31. Based on this analysis, which included document review and Plaintiff interviews, Plaintiffs provided Defendant with their damages model. *Id.* ¶ 23.

Prior to mediation, the Parties continued their settlement discussions via Zoom and by telephone to discuss the damages model, as well as the claims and defenses. *Id.* ¶¶ 23, 37 The Parties exchanged an offer and counteroffer in advance of the mediation. *Id*. Following the submission of mediation statements, on June 10, 2021, the Parties convened a mediation, via Zoom, with experienced wage and hour mediator, Martin Scheinman. The Parties reached an agreement in principle at the full-day mediation, with each Party verbally agreeing to the material terms of the settlement in the joint closing session of the mediation. *Id. See also* Ex. 5, Oh Decl. ¶ 11. Those terms form the basis of the Settlement Agreement that is now being submitted for this Court's consideration.

Plaintiffs and their Counsel believe that the settlement with Defendant for the consideration and on the terms set forth in the Agreement is fair and reasonable and is in the best interest of Plaintiffs and Settlement Class Members in light of all known facts and circumstances, including the risk of significant delay, the likelihood that Defendant would prevail on its defenses, and numerous potential appellate issues. Ex. 2, Second Elkin Decl. ¶ 38.

**II.     Summary of the Settlement Terms**

   **A. The Gross Settlement Fund**

The Settlement Agreement provides that Defendant will pay a total Settlement Amount of $562,056.00 to resolve the lawsuit ("Gross Settlement Fund"). The Gross Settlement Fund will be allocated as follows: (1) $103,192.63 as backpay; (2) $103,192.63 as liquidated damages; (3) $135,000.00 in Wage Statement damages; (4) $187,352.00 in attorneys' fees, which equals 33.33% of the Gross Settlement Fund; (4) $14,818.74 in litigation expenses; (5) $15,000.00 in Service Awards ($5,000 per Named Plaintiff); and (5) $3,500.00 in Settlement Administration Fees. *See* Ex. 1, Settlement Agreement, §IV, ¶¶ 4, 6.

November 9, 2021
Page 4

### B. Settlement Class Members and Distribution of Settlement Checks

The Settlement Agreement covers 27 individuals, including the Named Plaintiffs, who worked as Short-Term Disability Benefits Examiners at any time since January 12, 2015, and who were classified as FLSA "non-exempt" by Defendant. Ex. 1, Settlement Agreement, § 1. The Settlement does not resolve the claims of Settlement Class Members who do not negotiate their Settlement Check. *Id*. § IV, ¶ 3.

The Parties have mutually selected Rust Consulting, Inc. ("Rust"), an experienced Settlement Administrator, to administer this settlement. Should the Court approve the Settlement, and shortly after the Settlement Agreement becomes final (i.e., the 31st day after the Settlement Approval Date if no appeal is filed, or the date the Settlement Approval Order becomes final and binding after final resolution of any appeals if an appeal is filed), the Settlement Administrator will mail to all Settlement Class Members a Settlement Check representing their settlement payment along with a copy of the Settlement Notice explaining the key terms of the Settlement Agreement. *Id.*, § IV, ¶ 8. A copy of the Notice is included as Exhibit C to the Settlement Agreement. *Id.*

Notice and check distribution will be thorough and robust. Pursuant to Section IV, ¶ 8, no later than 14 days after Defendant funds the settlement, Rust shall mail the Settlement Notice and Settlement Checks to Settlement Class Members via First Class U.S. Mail. *Id.* The Settlement Checks shall be negotiable for 120 days from the date they are mailed by Rust. *Id.* § IV, ¶ 7.a. Rust will conduct standard skip tracing to locate missing Settlement Class Members and will promptly re-mail the Settlement Notice and Settlement Check to any corrected or updated address. *Id.* § IV, ¶ 8.e. Rust will also issue a reminder postcard in the form attached to the settlement as Exhibit D within 60 days prior to the check Void Date to all Settlement Class Members who have not yet negotiated their Settlement Checks. *Id.* § IV, ¶ 8.f.

### C. Release for the Named Plaintiffs and Participating Settlement Class Members

The Named Plaintiffs and Participating Settlement Class Members will release the Defendant and the Released Parties from all claims or causes of action that were alleged in the Action or could have been alleged in the Action arising out of the facts and circumstances alleged in the Complaint as defined in the Settlement Agreement for the time period that they were employed by SNY in New York as Short-Term Disability Benefits Examiners (or similar job title) who handled short-term disability claims at any time since January 12, 2015, through the Settlement Approval Date whom SNY classified as FLSA "non-exempt." Ex. 1, § IV, ¶ 3.a. Settlement Class Members (other than Named Plaintiffs) who do not negotiate their Settlement Check will not release any claims. *Id.*

### D. Calculation of Individual Settlement Payments, Tax Treatment, and Unclaimed Settlement Funds

Each Settlement Class Member's Individual Settlement payment was calculated using the payroll Data Defendant produced covering the time period from January 12, 2015, through February 28, 2021. Ex. 2, Second Elkin Decl. ¶¶ 40-41. Plaintiffs' Counsel developed the calculation methodology in an effort to treat all Settlement Class Members equitably based on the

November 9, 2021
Page 5

dates they worked, and the hours and earnings reflected in the payroll data. Ex. 1, Settlement Agreement § IV, ¶ 6.e. The settlement calculation methodology is set forth in the Agreement and each Settlement Class Member's damages amounts are reflected in Exhibit A to the Agreement. Defendant consents to Plaintiffs' Counsel's use of the settlement calculation methodology for settlement purposes only. Exclusive of Service Awards, and after the deduction of all fees, litigation expenses, and Administrator Fees, the average settlement payment is **$12,643.90** and the maximum settlement payment is **$18,236.80.** Ex. 2, Second Elkin Decl. ¶ 35.

Each Settlement Class Member will receive his or her Settlement Payment in one check, with half of the monies that are allocated to Overtime Damages considered wages and subject to W-2 deductions, and the other half of the Overtime Damages considered liquidated damages subject to MISC Income-1099 reporting. In addition, each Settlement Class Member's $5,000.00 Wage Payment settlement monies will be subject to MISC Income-1099 reporting. § IV, ¶ 6.f. Rust will issue each Participating Settlement Class Member the appropriate tax reporting forms. *Id.* Any settlement payments that remain uncashed after the Void Date will be returned to Defendant. § IV, ¶ 7.c.

### E. Service Awards, Attorneys' Fees and Litigation Costs, and Administration Fees

Pursuant to the Agreement, Plaintiffs seek approval of $15,000.00 in Service Awards for the three Named Plaintiffs (i.e., $5,000.00 per Named Plaintiff) to be paid from the Gross Settlement Fund as reflected in the Settlement Agreement. Ex. 1, § IV, ¶ 6.b. Plaintiffs' Counsel also request approval of attorneys' fees in the amount of $187,352.00, which equals 33.33% of the Gross Settlement Fund, and reimbursement of Plaintiffs' out of pocket litigation expenses in the amount of $14,818.74. *Id.*, § IV, ¶ 6.c. The Parties request approval of the appointment of Rust and its associated settlement administration fees not to exceed $3,500.00. *Id.* § IV, ¶ 5.

### III.   Applicable Factors for Approving FLSA Settlements

A settlement in an FLSA action is not effective unless it is approved by a district court or the United States Department of Labor. *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599-600 (2d Cir. 2020); *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206 (2d Cir. 2015). "[T]here is a strong presumption in favor of finding a settlement fair, because the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013).

District courts in the Second Circuit "approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Clem v. Keybank, N.A.*, 2014 U.S. Dist. LEXIS 87174 (S.D.N.Y. June 20, 2014) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013). Courts evaluating whether FLSA settlements are reasonable consider the following factors:

> (1) the plaintiffs' range of possible recovery;

> (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses;
> (3) the seriousness of the litigation risks faced by the parties;
> (4) whether the settlement is the product of arm's-length bargaining between experienced counsel; and
> (5) the possibility of fraud or collusion.

*Wolinsky v Scholastic, Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012); *Fisher*, 948 F.3d at 599-600 ("District courts typically evaluate the fairness of a settlement agreement by considering the factors outlined in *Wolinsky*…."). Importantly, under the Second Circuit's recent *Fisher* decision, "[w]hen presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." *Fisher,* 948 F.3d at 606.

### A. Application of the *Wolinsky* Factors to the Settlement of the Parties' *Bona Fide* Dispute

The Parties believe that the settlement terms are fair and reasonable. The settlement represents a good faith compromise of the parties' *bona fide* disputes regarding Plaintiffs' overtime pay and wage statement claims.

The Parties hotly disputed the number of unpaid overtime hours that Settlement Class Members worked per week. Defendant asserted that no unpaid overtime hours were suffered or permitted, and to the extent that Plaintiffs worked overtime, there were measures in place for them to record such hours and to be paid one and one-half times their regular rate of pay for those hours. Meanwhile, Plaintiffs insisted that they faced discipline, and suffered cuts to their annual bonuses when they were unable to complete their Short-Term Disability claims examination tasks by established deadlines; that, based on the substantial workload, they could not meet such deadlines in a 40-hour workweek; that management told them that while they are entitled to one- and one-half times their regular rate of pay for work performed in excess of 40 hours per workweek, they were not permitted to work overtime without pre-authorization; and that pre-authorization for overtime work was rarely granted. Moreover, Plaintiffs contend (and Defendant denies) that supervisors and management regularly suffered or permitted such work without pre-authorization and without paying for such work. In sum, the settlement resolves the *bona fide* dispute regarding unpaid overtime work. In addition, the settlement resolves a *bona fide* dispute regarding whether an award of liquidated damages is appropriate on these claims. Further, Defendant asserts that its wage statements were accurate, while Plaintiffs assert that they failed to include all hours of work. The settlement resolves this NYLL wage statement dispute, as well.

Plaintiffs' Counsel shared their damages calculations (which were developed using the actual pay and leave records, constituting almost 1,400 pages of PDF payroll sheets and over 26,000 lines of payroll and leave data of the Settlement Class Members) under Plaintiffs' theories and the Parties used this data to negotiate a fair settlement. Ex. 2, Second Elkin Decl. ¶¶ 23, 36. This compromise was reached after arm's-length negotiations with an experienced mediator over the complicated and multi-faceted damages claims advanced by the Plaintiffs. If the matter had not settled, Plaintiffs risked not being able to obtain class or collective action certification, risked

decertification at a later stage, and risked obtaining less than what they are recovering here, or worse for them, nothing at all.

This procedural posture, where Defendant denies that it violated the FLSA and the NYLL, disputed the hours worked, and settlement was reached only after extensive private mediation, supports a finding that a *bona fide* dispute exists between the parties.

### 1. *Plaintiffs' Possible Range of Recovery*

Plaintiffs believe that they have alleged sufficient facts to show a continuing and systemic violation of the provisions of FLSA and NYLL overtime pay protections. The Settlement fairly and adequately compensates Settlement Class Members who choose to participate in the Settlement and eliminates the possibility of a failed certification effort, decertification following phase two discovery, loss on summary judgment or at trial, and loss on appeal. Consequently, this Settlement brings value and certainty now, as opposed to years from now.

Plaintiffs' Counsel discussed these risks and the Defendant's potential liability, with the Named Plaintiffs and asked them to consider whether settlement was in the best interest of the Settlement Class Members. Each Named Plaintiff was specifically asked to consider that the continued litigation could result in the Short-Term Disability Benefits Examiners receiving a greater monetary judgment or lesser monetary judgment after trial and appeal, and each Named Plaintiff determined that certainty of settlement outweighs the risks and costs of going forward. Ex. 2, Second Elkin Decl. ¶ 43. The substantial benefit that Participating Settlement Class Members will immediately receive is a significant factor weighing in favor of the Court's approval of the Settlement Agreement. *Id.*

According to Plaintiffs' Counsel's calculations, one way to view the Gross Settlement Fund is that it reflects overtime backpay for approximately 3.75 hours of unpaid overtime each week of the recovery period (or 1.875 unpaid overtime hours each week of the recovery period, plus liquidated damages in an amount equal to that overtime backpay). *Id.* ¶ 39. The Gross Settlement Fund also includes an additional $5,000.00 payment to each of the 27 Settlement Class Members. *Id.* This is the maximum payment one can obtain for the alleged NYLL wage statement violations. *Id.*

The recovery period extends back six years from the date that the Complaint was filed. Plaintiffs would have had to prove that Defendant willfully violated the FLSA to extend the FLSA statute of limitations from two years to three years. *Id.* ¶ 40. However, because the damages calculated under the Settlement use the six-year lookback period under NYLL, Plaintiffs and Settlement Class Members are receiving the benefit of the longer statute of limitations under state law. *Id.*

The range of potential recovery was in flux. While Plaintiffs could have perhaps proved more hours of unpaid work time at trial, they could also have been awarded substantially fewer hours. For example, a jury could have found that while Plaintiffs worked unpaid overtime, it was not a daily, nor even weekly, occurrence. Adding to the complications involved in estimating the potential recovery are issues concerning whether SNY could avoid the imposition of liquidated damages.

November 9, 2021
Page 8

In the settlement in this case, Plaintiffs believe they have recovered a significant portion of their potential recovery at trial, including a portion of the liquidated damages, and full relief on the Wage Payment claim under NYLL. The average recovery for the Settlement Class Members as reflected in Exhibit A to the Settlement *after* the payment of attorneys' fees and litigation expenses, service awards, and settlement administration fees, is **$12,643.90** and the maximum payment is **$18,219.76.** *Id.* ¶ 35.

### *2. Avoiding Anticipated Burdens and Expenses*

Litigating FLSA claims and damages can be and would be a fact-intensive process demanding in-depth and costly litigation by both Parties. Without this settlement, both Parties would need to spend significant amounts of time, money, and expense to undertake substantial written discovery, multiple depositions, voluminous motions practice and pre-trial briefing of summary judgment motions regarding liability issues, followed by a trial on damages. Thus, the anticipated burdens and expenses on both parties were significant. This Settlement, on the other hand, allows for a significant recovery now.

### *3. Seriousness of Litigation Risks*

As noted in subsection III(A) above, there was no guarantee of success on either side. Plaintiffs' allegations detailed various continuing violations of the FLSA and the NYLL, but Defendant raised facts that could have led to a lengthy trial on the merits. Given the uncertainty over the potential outcome, both parties were motivated to settle this dispute.

### *4. Arm's-Length Bargaining*

Both Parties engaged in good faith, arm's-length negotiation in reaching this Settlement. Counsel for both Parties negotiated settlement terms over the course of several months and during a Zoom mediation with an experienced and well-respected private mediator who skillfully guided each side in making concessions and counteroffers. Ex. 5, Oh Decl. ¶ 11. In addition, the negotiations were based on the actual payroll data for all Settlement Class Members provided by Defendant and the damages models created by Plaintiffs' Counsel, which were used by the Parties to achieve this settlement.

All three Named Plaintiffs support the Settlement Agreement and want it to be approved in its entirety, including the payment of attorneys' fees equal to 33.33% of the Gross Settlement Fund. Ex. 2, Second Elkin Decl. ¶ 41; Exs. 8-10.  They specifically object to Counsel being paid less than this amount.  Ex. 8 ¶ 13; Ex. 9 ¶ 12; Ex. 10 ¶ 12.

### *5. Possibility of Fraud or Collusion*

Given the Parties' arm's-length negotiating, good faith participation in settlement discussions, and the fact that the settlement was reached through a day-long mediation with a private mediator with an expertise in wage and hour law, there was no opportunity for fraud or collusion. Ex. 5, Oh Decl. ¶ 11; Exs. 8-10 ¶ 8.  The Parties represented their clients zealously and obtained what both Parties consider to be a fair and reasonable Settlement consistent with standards established in the Second Circuit for FLSA collective action settlements. Ex. 5, Oh Decl. ¶¶ 13- 14.

### B. The Service Awards to the Settlement Team Are Appropriate

Courts in this Circuit have recognized that, "[i]n FLSA collective actions, just as in Rule 23 class actions, service awards are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *See Sanz v. Johnny Utah 51 LLC*, 2015 U.S. Dist. LEXIS 51683, at *5 (S.D.N.Y. 2015) (quoting *Diaz v. Scores Holding Co., Inc.*, 2011 U.S. Dist. LEXIS 112187, at *3-4 (S.D.N.Y. 2011)).

This Court has regularly approved service awards to Named Plaintiffs. As this Court has explained in awarding service awards, "in a wages and hours case, where a low-level employee assumes responsibility for prosecuting an action against an employer and takes considerable personal risk in so doing, such awards are singularly appropriate." *Henry v. Little Mint, Inc.,* 2014 U.S. Dist. LEXIS 72574, at *11(S.D.N.Y. May 23, 2014). Service awards "fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take." *Flores v. Anjost Corp.*, 2014 U.S. Dist. LEXIS 11026, at *27 (S.D.N.Y. Jan. 29, 2014). As such, service awards are common in the Second Circuit. *See, e.g.*, *Sealock v. Covance, In*c., 2020 U.S. Dist. LEXIS 44753, at *11-12 (S.D.N.Y. Mar. 13, 2020) (approving $10,000 service award to plaintiff); *Bryant v. Potbelly Sandwich Works, LLC*, 2020 WL 563804, at *22 (S.D.N.Y. Feb. 4, 2020) (approving service awards between $2,500 and $5,000 to participating plaintiffs); *Surdu v. Madison Global, LLC,* 2018 U.S. Dist. LEXIS 48356, at *35 (S.D.N.Y. Mar. 23, 2018) (awarding $8,500 each to five plaintiffs, totaling $42,500 and representing 12.4% of the settlement fund, in FLSA case); *Hyun v. Ippudo USA Holdings,* 2016 U.S. Dist. LEXIS 29115, *6 (S.D.N.Y. Mar. 24, 2016) (awarding $6,000 to each of five named plaintiffs as service award, for $30,000 total equaling 5% of total settlement amount, in FLSA case).

Under the Settlement Agreement, Service Awards equal to $5,000.00 will be provided to the three Named Plaintiffs (for a total of $15,000.00) who each contributed a significant amount of time and effort to bring these claims, which ultimately benefit 24 other Short-Term Disability Benefits Examiners, at great risk to themselves. Ex. 2, Second Elkin Decl. ¶ 39. For example, the Named Plaintiffs participated in lengthy interviews and expended a significant amount of effort collecting documents to help counsel gather facts for the Complaint and for mediation. *Id;* Exs. 8 – 10 ¶ 7. Additionally, they were instrumental in helping counsel prepare for settlement discussions, helping counsel to understand the intricacies of the position at issue and its workload requirements, so that counsel could zealously negotiate during mediation. *Id.* Named Plaintiffs participated in the mediation/settlement process. *Id*.

### C. Plaintiffs' Attorneys' Fees and Costs Should be Approved

Plaintiffs seek $187,352.00 in attorneys' fees, which is equal to 33.33% of the Gross Settlement Fund, and $14,818.74 in actual litigation expenses.

#### *1. Public Policy Supports Awarding Attorneys' Fees to Plaintiffs' Counsel*

"Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA[.]" *Deleon*, 2015 U.S. Dist. LEXIS 65261 at *

5 (citing *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000), for "commending the general 'sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.'"). *See also Beckman,* 293 F.R.D. at 481 ("FLSA and NYLL are remedial statutes designed to protect the wages of workers. The remedial purposes of these statutes require adequate compensation for attorneys who protect those rights."); *Matheson v. T-Bone Rest. LLC,* 2011 U.S. Dist. LEXIS 143773, at *21-22 (S.D.N.Y. Dec. 11, 2011) ("Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes.").

The FLSA, and many state wage and hour laws including the New York Labor Law, reflect a "private attorney general" model. Workers are permitted to engage private counsel to file claims on their behalf and others through the use of collective and class actions, which benefit society and reflect important public policies, including the protection of the rights to minimum wages and overtime compensation. Ex. 7, O'Brien Decl. ¶ 9. The role of private attorney general is extraordinarily important to the enforcement of the FLSA. *Id.* ¶ 10. It advances the remedial nature of the statute because it encourages experienced and able counsel to step up and bring these actions and to do so in a way where low-wage and middle-income workers can actually afford excellent representation. *Id.* That is exactly what the Plaintiffs in this case were able to obtain when they engaged McGillivary Steele Elkin LLP, the Hedgpeth Law Firm, and the Siegel Law Group to represent them on a contingency fee basis. *Id. See also* Exs. 8-10 ¶¶ 2-5 (plaintiffs would not have been able to afford to compensate counsel on an hourly basis or pay their expenses). Indeed, pursuing wage and hour violations through litigation would be a cost-prohibitive endeavor for workers if they were required to pay their attorneys on an hourly basis (as Defendant's counsel was paid here; Exhibit 5, Oh Decl. ¶ 7), particularly where they are low-wage or where their individual claims would be too small for attorneys to otherwise take on the risk of litigation. Ex. 7, O'Brien Decl. ¶ 12-13. Given the tremendous success of the private attorneys general in this wage and hour lawsuit, they are entitled to receive "adequate compensation," which in this case, is 33.33% of the gross settlement fund. *Id.* ¶ 15. *See also* Ex. 6, Pordy Decl. ¶¶ 7, 26.

### 2. Percentage of the Fund Awards are Favored in this Circuit and Encourage Early Resolution of Wage and Hour Disputes

The Second Circuit favors the use of the contingent percentage of the fund method to compensate attorneys in overtime wage and hour actions. *See, e.g., McDaniel v. County of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart Stores, In. v. Visa U.S.A., Inc.* 396 F.3d 96 (2d Cir. 2005). The reasoning behind this is straightforward: "[T]he percentage method directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Monserrate v. Tequipment, Inc.*, 2012 U.S. Dist. LEXIS 164265, at *3 (E.D.N.Y. 2012). That "powerful incentive" is the very real possibility that plaintiffs' counsel will not recover any fees whatsoever. *See Butt v. Megabus Ne. LLC*, 2012 U.S. Dist. LEXIS 137683, at *22 (S.D.N.Y. 2012).

Indeed, "[i]t has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method. For the same reason, the percentage-of-the-fund method also removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet." *See also Henry,* 2014 U.S. Dist. LEXIS

72574, at *34. The percentage of the fund method also conserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Johnson v. Brennan,* 2011 U.S. Dist. LEXIS 105775, at *43 (S.D.N.Y. Sept. 16, 2011) (quoting *Karpus v. Borelli,* 2004 U.S. Dist. LEXIS 21429, at *11 (S.D.N.Y. Oct. 26, 2004)).

There is no requirement that litigation be protracted to warrant approval of a percentage of the fund fee. Indeed, requiring protracted litigation is contrary to the remedial purpose of the FLSA, this Circuit's case law, and this Circuit's preference for swift settlements. *See, e,g,., Lesser v. Tiaa Bank*, No. 19-CV-1707 (BCM), 2020 U.S. Dist. LEXIS 194281, at *8 (S.D.N.Y. Oct. 20, 2020) (approving a one-third percentage of the fund to plaintiffs' counsel and noting that considering the relevant factors, "including the 'degree of success obtained' — which the Court finds to be significant in light of the litigation risks summarized above and the costs and uncertainties that have been avoided — ***and 'recognizing the importance of encouraging the swift resolution of cases like this one and avoiding 'creating a disincentive to early settlement,*** the Court concludes that counsel's proposed fee award is fair and reasonable.'") (quoting *Pinzon v. Jony Food Corp.*, No. 18-CV-105(RA), 2018 U.S. Dist. LEXIS 87424, at *9 (S.D.N.Y. May 24, 2018)) (emphasis supplied).

Early resolution of wage and hour cases is encouraged and serves the clear and important remedial purposes of the FLSA and related state laws. A denial of a request for reasonable attorneys' fees to plaintiffs' counsel in wage and hour cases would expressly contradict these remedial purposes by incentivizing attorneys to engage in unnecessary, protracted litigation in order to make pursuing wage and hour litigation on behalf of employees financially worthwhile. Ex. 7, O'Brien Decl. ¶ 16. Attorneys should not be penalized for reaching early settlements, where, as here, the settlement provides for substantial payments to Participating Settlement Class Members. *Id*. Attorneys should not be penalized for their success in avoiding the extensive burdens and expenses of prolonged litigation, the expense of motions practice, formal discovery and depositions, resolution of discovery disputes, dispositive motions briefing, trial, and potential appeal. *Id.*

Early resolution, as long as the resolution is fair and reasonable, as it is here, benefits all parties involved, as well as the Court. Not only does it free up the Court's burdened docket to allow it to focus its attention on cases that cannot settle, but it also allows plaintiffs to be paid the unpaid wages they are owed *now*, without requiring them to wait until the conclusion of potentially years-long litigation *Id.* ¶ 17. *See also* Exs. 8-10 ¶¶ 4, 10-11 (settlement agreement provides plaintiffs and Settlement Class Members with settlement payments now, at a time when many are still struggling due to the effects of the COVID-19 pandemic, instead of after multiple years of hard-fought and expensive litigation including trial and possible appeals). It also benefits the defendant employer by resolving any wage-related disputes brought by plaintiffs and by foreclosing further wage and hour litigation for the applicable recovery period. Ex. 5, Oh Decl. ¶ 12.

If the Court denies the motion to approve the settlement because the Court believes that the Plaintiffs' attorneys should not be paid a 1/3 percentage of the fund on the grounds that the case settled without the need for extensive motions practice or because it believes that Plaintiffs' lodestar is not warranted given the few docket items filed, the Court's denial would necessarily harm the Plaintiffs and the Participating Settlement Class Members themselves by creating

unnecessarily protracted litigation and delay in resolving the instant case. Ex. 8- 10 ¶ 11 (Plaintiffs know Settlement Class Members who would benefit from receiving settlement payments now as opposed to years from now); Ex. 8 ¶ 12 (Plaintiff may not have mortgage approved without the settlement payment); Ex. 2, Second Elkin Decl. ¶ 45; Ex. 7, O'Brien Decl. ¶ 18. Delay and additional expense is particularly problematic given that not only do the Plaintiffs want the settlement approved in its entirety, including the award of attorneys' fees equal to 33.33% of the fund, and specifically object to a reduction to that fee, but also Plaintiffs agreed at the start of the litigation to pay 40% of the funds recovered, which is a significantly higher percentage than Plaintiffs' Counsel now seek to recover pursuant to the Settlement Agreement. Ex. 2, Second Elkin Decl. ¶ 44; Exs. 8-10 ¶¶ 4-5, 12, 13. (Plaintiffs agreed to pay a contingency fee of 40% of all funds recovered, so Plaintiffs are pleased that through the Settlement Agreement they voluntarily and willingly signed, Plaintiffs' Counsel is requesting to be paid 33.33% of the gross settlement).

Thus, given the important remedial purposes of the FLSA and the private attorney general model, evaluating the fees provided for in a settlement agreement using the "percentage-of-recovery" method, particularly when cases settle early, is consistent with the "trend in this Circuit." *Bannerman v. Air-Sea Packing Grp.*, 2020 U.S. Dist. LEXIS 12868, at *3 (S.D.N.Y. 2020).

### *3. An Award Equal to One-Third of the Settlement is in Line with Fee Awards in This Court and This Circuit*

"When using a 'percentage of the fund' approach, 'courts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.'" *Xiao v. Grand Sichuan Intn'l St. Marks, Inc.*, 2016 U.S. Dist. LEXIS 99669, at *3 (S.D.N.Y. Jul. 29, 2016) (citing *Meza v. 317 Amsterdam Corp.*, 2015 U.S. Dist. LEXIS 166890 (S.D.N.Y. Dec. 14, 2015)). Attorneys' fees of one-third of the settlement fund not only provide sufficient incentive for attorneys to take on FLSA cases, but also "often strike a balance between excessive attorney fees and effective attorney incentives, and thus advance the FLSA's purpose of ensuring that workers receive fair compensation through litigation with the assistance of counsel, if necessary." *Alvarez v. Sterling Portfolio Inv. L.P.,* 2017 U.S. Dist. LEXIS 206043, at *12 (E.D.N.Y. Dec. 13, 2017). There is no requirement that litigation be protracted to entitle the attorneys to a 1/3 percentage of the fund fee.

Your Honor routinely approves FLSA settlements in which plaintiffs' counsel are awarded one-third of the settlement fund. *See, e.g., Aguirre v. Gianfranco Pizzeria & Restaurant, Inc.,* Case No. 7:20-cv-09311-NSR (S.D.N.Y.), Dkt. 15 (Oct. 15, 2021) (approving hybrid FLSA/NYLL settlement and awarding plaintiffs' counsel attorneys' fees equal to $16,000 or one-third of the settlement fund); *Caballero-Flores v. Delicias Del Jireh, Inc.,* Case No. 20-cv-10279-NSR (S.D.N.Y.), Dkt. 16 (Aug. 5, 2021) (approving hybrid FLSA/NYLL settlement and awarding plaintiffs' counsel one-third of the $30,000 settlement as attorneys' fees); *Garzon v. Tappan Golf Pro Shop Inc.,* Case No. 7:19-cv-10780-NSR (S.D.N.Y.), Dkt. 15 (Dec. 18, 2020) (approving $57,500 hybrid FLSA/NYLL settlement and awarding plaintiffs' counsel a fee of one-third of the settlement fund); *Estrada v. Kingsbridge Marketplace Corp.,* Case No. 7:17-cv-09890-NSR-LMS (S.D.N.Y.), Dkt. 151 (Feb. 28, 2020) (approving $275,000 hybrid FLSA/NYLL class settlement, including attorneys' fee award of $91,666 or approximately one-third of the fund); *Gutierrez v. New Rochelle Hot Bagel, Inc.,* Case No. 7:17-cv-05752-NSR (S.D.N.Y.), Dkt. 16 (Nov. 2, 2018) (approving hybrid FLSA/NYLL settlement and awarding plaintiffs' counsel one-third of the $30,000 settlement fund as attorneys' fees); *Weinstein v. Golden Knight Limousine Service, Inc.,*

November 9, 2021
Page 13

Case No. 7:16-cv-08423-NSR (S.D.N.Y.), Dkt. 30 (Sept. 25, 2017) (approving hybrid FLSA/NYLL settlement and approving attorneys' fees equal to one-third of the settlement) *Reyes v. City of Rye,* Case No. 7:13-cv-09051-NSR (S.D.N.Y.), Dkt. 145 (Jun. 30, 2017) (approving $1,000,000 hybrid FLSA/NYLL class settlement and awarding Plaintiffs' counsel attorneys' fees in the amount of $328,321.40 or one-third of the settlement fund after costs).

This Court's fee awards are consistent with fee awards routinely approved in FLSA cases in this Circuit. *See, e.g., Worley v. City of New York,* 1:17-cv-4337 (S.D.N.Y.), Dkt. 230 (June 8, 2020) (approving 1/3 percentage of the fund fee in $27,747,075.00 FLSA settlement); *Bryant v. Potbelly Sandwich Works, LLC*, 2020 U.S. Dist. LEXIS 21900, at *15 (S.D.N.Y. Feb. 4, 2020) (in FLSA/Rule 23 hybrid, approving one-third of common settlement fund as "reasonable and well within the accepted range awarded in wage and hour cases in this District and throughout the Second Circuit"); *Cruz v. Sal-Mark Rest. Corp.,* 2019 U.S. Dist. LEXIS 13529, at *21 (N.D.N.Y. Jan. 28, 2019) (approving one-third fee, noting that a "presumptively reasonable fee takes into account what a reasonable, paying client would pay" and this "supports a one-third (33.33%) recovery in a case like this one where Class Counsel's fee entitlement is entirely contingent upon success"); *Chung v. Brooke's Homecare LLC,* 2018 U.S. Dist. LEXIS 80098, at *3-4 (S.D.N.Y. 2018) (awarding one-third fee, noting that "Courts routinely award 33.33% of a settlement fund as a reasonable fee in FLSA cases"); *Penafiel v. Babad Mgmt. Co., LLC,* 2018 U.S. Dist. LEXIS 66991, at *9 (S.D.N.Y. Apr. 18, 2018) (awarding 33.3% fee, noting "Contingency fees of one-third in FLSA cases are routinely approved in this Circuit").

Here, because the Settlement Agreement provides that Plaintiffs' Counsel will be awarded one-third of the total settlement fund, equaling $187,352.00, it is consistent with fee awards in this Circuit in similar cases and should be approved, regardless of the lodestar.

### *4. The Fee is Reasonable Based on Traditional Criteria*

In determining a reasonable award of attorneys' fees, this Court considers "traditional criteria" such as: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement and (6) public policy considerations. *Goldberger,* 208 F. 3d 43, 50 (2d Cir. 2000) (internal quotations omitted). An analysis of these traditional criteria further supports the attorneys' fee requested.

i. <u>The Time and Labor Required Was Extensive</u>

The sparse docket does not tell the complete story of the extensive work that was put into this case. The detailed billing narratives, which Plaintiffs' Counsel did not attach with their initial motion but later submitted following an invitation by the Court's clerk for additional documentation (Dkts. 35.1, 35.2, 35.3), detail the substantial work by Plaintiffs' Counsel on this case. These detailed billing records, submitted again here (Exhibits 2 – 4) show that 52.3 hours were expended in thoroughly investigating the state law and FLSA claims in the Complaint, researching NYLL, conducting multiple interviews with each Plaintiff commencing in October 2020 and concluding in December 2020, preparing and reviewing the Complaint, and filing the Complaint. Ex. 2, Second Elkin Decl., ¶ 21; Ex. B (detailed billing records); Ex. 3, Second Hedgpeth Decl., Att. 1 (detailed billing records); Ex. 4, Second Siegel Decl., Att. 1 (detailed billing records).

November 9, 2021
Page 14

In addition, 13.5 hours were spent preparing and filing procedural motions and other documents, and 8.9 hours were devoted to researching, discussing and addressing issues related to class and conditional certification, including 6.7 hours researching and drafting a motion for conditional certification on March 1, 2021, a motion that ultimately did not need to be filed because on March 2, 2021, Defendant suggested during a Zoom meeting that the Parties should focus their efforts on defining a settlement class and attempting settlement. Ex. 2, Second Elkin Decl. ¶ 22. Thereafter, Plaintiffs' Counsel spent some 179.6 hours engaged in settlement efforts through September 22, 2021, which proved an excellent and efficient use of their time. *Id.* ¶ 23. These reasonable and necessary attorney work hours, most of which are not reflected in any pleadings or other filings on the Docket, but are described in the detailed fee listings submitted by Counsel, included:

- Negotiating a settlement class with Defendant;

- Researching and communicating with mediators;

- Negotiating the parameters for pre-mediation discovery;

- Engaging in pre-mediation discovery, including obtaining, reviewing, and producing hundreds of pages of documents from Plaintiff Simmons; and preparing Plaintiff Simmons for a pre-mediation deposition;

- Reviewing and analyzing 1,400 pages of PDF payroll sheets and over 26,000 lines of payroll and leave data of the Settlement Class Members;

- Discussing, creating, reviewing and revising damages models that formed the basis of the Parties' principled negotiations;

- Overseeing and communicating with the Plaintiffs' damages expert;

- Preparing, revising, circulating and sending the initial settlement demand to Defendant on May 24, 2020;

- Preparing for and participating in multiple Zoom conferences with opposing counsel about the damages model;

- Preparing, circulating, editing and submitting a detailed 15-page mediation statement to Wage and Hour Mediator Martin Scheinman;

- Preparing an opening statement for the joint mediation session;

- Reviewing, analyzing and rebutting arguments made in Defendant's mediation statement and pre-mediation settlement counter-offer;

- Researching case law in response to Defendant's arguments;

- Participating in mediation on June 10, 2021;

November 9, 2021
Page 15

- Interviewing and selecting a Settlement Administrator and explaining the Administrator's duties under the Settlement;

- Participating in multiple telephone conference calls about the mediation and settlement with Plaintiffs Simmons, Smitherman and Gorostiza;

- Negotiating the language of the Settlement Agreement, drafting, revising and modifying the Settlement Agreement;

- Drafting the Notice to Settlement Class Members and the Reminder Notice;

- Drafting the Proposed Order Approving the Settlement Agreement;

- Preparing and drafting the initial request for settlement approval ("Cheeks Letter") that was filed on July 22, 2021); and

- Preparing subsequent letters to the Court about the settlement (September 9 and September 22 filings).

Ex. 2, Second Elkin Decl. ¶ 23.

The remaining time billed by Plaintiffs' Counsel through September 22, 2021 included miscellaneous work (1.6 hours) such as negotiating a co-counsel arrangement, entering into a co-counsel agreement and discussing strategy including a 2-phase discovery plan absent settlement; reviewing and analyzing Defendant's arguments and its Answer (2.2 hours) and traditional paralegal work (13.7 hours). *Id.* ¶ 24. In total, Plaintiffs' Counsel billed 271.9 hours to this case through September 22, 2021. *Id.* ¶ 25. *See also* Exs. 3-4; Exs. 8-10 ¶ 6 (Plaintiffs are aware that their attorneys performed extensive but necessary work to ensure successful prosecution and settlement of the case, even though the case settled quickly, including conducting meetings with Plaintiffs as part of preparing the Complaint, deposition preparation, pre-mediation document review, and discussing mediation and settlement terms). This time does not include any time billed since September 22, 2021 for their continuing and concerted efforts to address the Court's concerns about Plaintiffs' requested fees, which to date, are in excess of an additional 35 hours. *Id.* ¶ 32.

Significantly, like Plaintiffs' Counsel in this matter, Defense Counsel spent substantial and necessary time to achieve a fair settlement of the Plaintiffs' claims—claims that were hotly contested by Defendant. This work includes, but is not limited to, responding to the Complaint, negotiating scheduling orders and pre-mediation discovery agreements, negotiating the parameters of a settlement class, client communications, substantial data analysis and production of thousands of documents and lines of data which would form the basis of the damages models created by Plaintiffs and used by both parties to resolve this case, preparing mediation statements and responding to settlement demands, preparing for and participating in mediation, reviewing and revising the settlement papers prepared by Plaintiffs' counsel, and revising the *Cheeks* memorandum prepared by Plaintiffs' counsel. Ex. 5, Oh Decl. ¶ 8. Based on this work, most of which is not reflected on the docket due to the Parties' successful ability to work together to resolve the matter without engaging in motions practice and protracted litigation, ***Defendant's lodestar fees are substantially equivalent to Plaintiffs***—the primary difference being that Defense counsel

November 9, 2021
Page 16

have actually been paid by their fee-paying client as this litigation ensued, unlike Plaintiffs' counsel. *Id*. ¶ 9.

As set forth above, and as supported by the Declarations (Exhibits 2 – 5), Plaintiffs' lodestar, which is presented ***only for purposes of a lodestar crosscheck*** (discussed below in Section C.5), is reasonable.

### ii. The Litigation Was Complex

"The size and difficulty of the issues in a case are significant factors to be considered in making a fee award." *Sukhnandan v. Royal Health Care of Long Island LLC*, 2014 U.S. Dist. LEXIS 105596, at *10 (S.D.N.Y. Jul. 31, 2014). In this case, given the hybrid nature of the claims, the variables regarding damages, including the availability of liquidated damages, the multiple Plaintiffs and putative plaintiffs comprising the Settlement Class Members, and the sophistication of the employer and its policies, and the fact that in many instances the work was performed remotely, the case did not represent a straightforward FLSA claim where a single employee seeks compensation for an easily defined amount of unpaid work. Ex. 6, Pordy Decl. ¶ 18. To prevail at trial, Plaintiffs would have had to overcome Defendant's assertions that it did not know about the off-the-clock work at issue, and to the extent that there was off-the-clock work, there were fewer hours worked than Plaintiffs' claim, and that Plaintiffs did not perform such work each and every day over the 6-year recovery period. *Id*. Instead, it involved multiple Plaintiffs, each of whom brought forth multiple FLSA/NYLL claims, with hours of off-the-clock work being difficult to prove. *Id.* ¶ 19. In addition, Plaintiffs would have had to obtain collective action certification of their claims under Section 216(b) of the FLSA and defeat any motion for decertification, if the case was conditionally certified as a collective action. *Id.* As a result, this litigation was complex, and Plaintiffs' Counsel's expertise greatly benefitted the plaintiffs.

### iii. The Risk of Litigation

Plaintiffs' Counsel's entitlement to be paid has been wholly contingent upon achieving a good result. Ex. 2, Second Elkin Decl. ¶ 27. In addition, Plaintiffs' Counsel has advanced all of the expenses of the litigation. *Id.* ¶ 26. Plaintiffs' Counsel was required to make a significant investment of time and resources without a guarantee of any kind. Indeed, absent settlement, issues of class certification, collective action certification, liability, and damages would have all been hard-fought by Defendant with no guarantee of Plaintiffs' success on any issue in contention. Accordingly, Plaintiffs' Counsel faced significant obstacles to recovery and real litigation risk for all 27 Short-Term Disability Benefits Examiners absent settlement.

### iv. The Fee in Relation to the Settlement Fund is Reasonable

The cases cited in Section C.i. confirm the reasonableness of the requested fee, as it is consistent with other FLSA cases in this Circuit. *See also* Ex. 6, Pordy Decl. ¶ 26 (the requested fee is "within or below the market rate for the Southern District of New York legal market for similar skilled counsel to achieve a similar result in a similar case"). As demonstrated in Section C. 3. below, the fee represents a lodestar multiplier that is well within the range approved by courts in this Circuit.

      Moreover, a Court's "primary goal when awarding fees is to approximate the prevailing market rate for counsel's services." *In re Comverse Tech., Inc., No.* 2010 U.S. Dist. LEXIS 63342, at *11-15 (E.D.N.Y. June 23, 2010) *quoting Goldberger*, 209 F.3d at 52 ("[M]arket rates, where available, are the ideal proxy for [class counsel's] compensation'); *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 184 (awards in fee-shifting cases should approximate market rates)."Because attorneys and clients ordinarily strike their bargain prior to litigation (i.e., when the risk of loss still exists), an ex ante fee agreement is the best indication of the actual market value of counsel's services." *Id*. at *13. Here, at the outset of the lawsuit, Named Plaintiffs determined that the fair market rate for Plaintiffs' Counsel's work was 40% of the funds recovered. Ex. 2, Second Elkin Decl. ¶ 44; Exs. 8–10 ¶¶ 5-6. Each Named Plaintiff signed a retainer agreement agreeing to pay that amount, yet Plaintiffs' Counsel seek only 33.33% of the Gross Settlement Fund as a fee. *Id.* In addition, Defendant's counsel has had cases where plaintiffs' counsel have requested and received approval of attorneys' fees that were more than 40% of the settlement fund. Ex. 5, Oh Decl. ¶ 14. Thus, awarding attorneys' fees that are less than the "market rate" amount is certainly reasonable and fair to Plaintiffs.

                          v.      <u>The Quality of Representation</u>

      As described fully in the Declarations of Plaintiffs' Counsel (Exhibits 2-4), Plaintiffs' Counsel are nationally recognized experts in the FLSA and in wage and hour litigation, and their expertise greatly benefitted the Plaintiffs. *See* Ex. 6, Pordy Decl. ¶ 14 ("I have worked with [Molly Elkin] and her firm in dozens of FLSA cases over the course of the last decade, and am of the opinion that she and her partners are experts in the field of class and multi-plaintiff wage and hour litigation."). For example, Ms. Elkin has served as lead counsel in over 100 FLSA court and arbitration cases, collecting millions of dollars in damages resulting from unpaid wages for workers nationwide. Ex. 2, Second Elkin Decl. ¶ 3. She is a regular speaker on FLSA and other wage and hour topics at attorney conferences nationwide; serves by appointment (since 2014) on the United States Court of Federal Claims' Advisory Committee on Civilian Pay issues; was nominated and served for years as the Co-Chair of the ABA's Labor and Employment Law Section's Committee on Federal Labor Standards Legislation (which has jurisdiction over the FLSA); and in 2017, was inducted as a Fellow into the College of Labor and Employment Lawyers. Ex. 2, Second Elkin Decl. ¶¶ 2-12. *See also* Exs. 3-4 (describing the expertise of Plaintiffs' Counsel Travis Hedgpeth and Jack Siegel). The firms were supported by diligent, hard-working attorneys and paralegals who helped bring this action to a favorable resolution for Plaintiffs. Indeed, Plaintiffs believe that the representation by Plaintiffs' Counsel was exceptional. Exs. 8-10 ¶ 3. Similarly, Defendant's Counsel, based on his more than 20 years of experience representing employers in wage and hour cases, believes that Plaintiffs' Counsel were, at all times, professional, pleasant, hard-working, responsive, produced excellent work product, and demonstrated authentic devotion to their clients' cause. Ex. 5, Oh Decl. ¶ 13.

                        vi.      <u>Public Policy Weighs in Favor of Approving the Fee</u>

      As set forth above in Section C.1, the provision for attorneys' fees in the FLSA is intended "to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010). Without the ability to collect at least a portion of the fees expended, the remedial purpose of the FLSA would not be fulfilled as attorneys

would be unable to bring such cases. *See, e.g.*, *Silverstein v. Stamatelos*, 2013 U.S. Dist. LEXIS 1797334 (S.D.N.Y. 2013) ("Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims that might otherwise be too small to justify retention of able, legal counsel"). *See also* Ex. 7, O'Brien Decl. ¶ 10. Significantly, in this case, Plaintiffs' Counsel were able to vindicate Plaintiffs' rights and obtain a favorable settlement on the claims now, while avoiding the risks of trial as well as the delay in the trial schedule necessitated by the COVID-19 pandemic. As such, public policy favors approval of the attorneys' fees requested.

Moreover, here, public policy is aligned with the Plaintiffs' interests and wishes: Plaintiffs, who agreed to pay a 40% contingency fee but are instead paying a 33.33% fee, have submitted declarations asking the Court to approve this Settlement Agreement ***inclusive of the fee award to Plaintiffs' Counsel***. Exs. 8-10 ¶¶ 4-5. Plaintiffs are thrilled with their representation, believe the requested fee is a fair amount based on the excellent outcome for the Plaintiffs and the Settlement Class and the risks undertaken by Plaintiffs' Counsel in the case, and would like their counsel adequately compensated pursuant to the 33.33% percentage of the fund fee set forth in the Settlement Agreement they wholeheartedly signed. Ex. 8 ¶¶ 3, 5, 11-13; Ex. 9-10 ¶¶ 3, 5, 11-12.

### *5. A Lodestar Cross-Check Supports the Fees Requested*

As set forth above, Plaintiffs are entitled to an award of fees equal to 1/3 of the gross settlement fund, as the percentage of the fund method is favored by the Second Circuit and fee requests equal to one-third of the settlement fund are routinely approved. Nevertheless, a lodestar cross-check confirms the reasonableness of Plaintiffs' Counsel's fee request.

The lodestar multiplier is calculated by dividing the fee award by the lodestar (the reasonable hours billed multiplied by a reasonable hourly rate). *James v. China Grill Mgmt.*, 2019 U.S. Dist. LEXIS 72759, at *8 (S.D.N.Y. 2019). Notably, "[w]here the lodestar method is used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Bryant v. Potbelly Sandwich Works, LLC*, 2019 WL 1915298, at *19 (S.D.N.Y. 2020).

Detailed billing records setting for the extensive work performed by Plaintiffs' Counsel through September 22, 2021, along with their hourly rates, are attached as exhibits/attachments to each of the Second Declarations of Molly A. Elkin, Travis Hedgepeth, and Jack Siegel. *See* Exs. 2-4. Multiplying the hourly rates[1] by the hours of work performed through September 22, 2021 results in a lodestar of $108,367.00. Ex. 2, Second Elkin Decl. ¶ 34. Thus, Plaintiffs' Counsel's request for a 1/3 percentage of the fund results in a multiplier of 1.7 which is certainly within (or below) the range of multipliers awarded by this court. "Courts in this Circuit regularly award lodestar multipliers from two to six times lodestar with some courts approving fee requests that are up to eight times the lodestar, and in some cases, even higher...." *Bryant v. Potbelly Sandwich Works, LLC*, 2020 WL 563804, at *19 (S.D.N.Y. 2020); *Beckman,* 293 F.R.D. at 481; *Ceka v.*

---

[1]The hourly rates are $610 for senior partners, $400 for senior associates, and $195 for paralegals. Such hourly rates are reasonable and consistent with the rates used by labor and employment attorneys in New York. Ex. 6, Pordy Decl. ¶¶ 12-13.

*PBM/CMSI Inc.*, 2014 WL 6812127, at *1 (S.D.N.Y. 2014) (approving 3.36 multiplier); *Pena v. Le Cirque, Inc.*, No. 14 Civ. 7541, Dkt. Nos. 45 & 46 (approving 4.9 multiplier); *James v. China Grill Mgmt.*, 2019 U.S. Dist. LEXIS 72759, at *8-9 (approving 3.53 multiplier). As set forth in the Declaration of Hope A. Pordy, a 1.7 multiplier is routinely approved in FLSA settlements in the Southern District of New York. Ex. 6, Pordy Decl. ¶ 17. Indeed, Courts routinely approve multipliers higher than 2 in such cases. *Id.*

Where a lodestar cross-check is applied, courts consider "whether a multiplier is warranted based on factors such as (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved." *Henry*, 2014 U.S. Dist. LEXIS 72574, at *43-44; *In re Boesky Secs. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995); *see also Goldberger*, 209 F.3d at 4. As set forth in Sections A.1 and C.4.iii and v, Plaintiffs' Counsel zealously and skillfully litigated this action with no guarantee of success and the results achieved are excellent. Under these circumstances, a 1.7 multiplier is appropriate.

Moreover, assuming *arguendo* that the Court remains unpersuaded that Plaintiffs' lodestar of $108,367 discussed in Section C.4.i, *supra,* is appropriate given the limited Docket entries and "scant affidavits" provided by Counsel, (Dkt. 36), and instead believes that the lodestar should be reduced by, for example, two-thirds, ***the lodestar multiplier cross-check would still warrant approval of the percentage of the fund request here.*** Under this hypothetical scenario, Plaintiffs' lodestar would be reduced to $36,122. As such, the multiplier would be 5.1. Given the outstanding results achieved for the Settlement Class Members, under which they will be paid after the deduction of all fees, expenses, administrator fees, and service awards, on average, **$12,643.90 and up to $18,219.76** now and be able to avoid all litigation risk and delay, a 5.1 multiplier would certainly be warranted.

### D. Approval of Plaintiffs' Counsels' Expenses is Warranted

Plaintiffs' Counsel has incurred $14,818.74 in litigation expenses. Ex. 2, Second Elkin Decl., ¶ 33. The largest expenses were: (1) the mediator's fee of $5,700, which was necessary to achieve this arm's-length negotiated settlement; and (2) the Damages Expert's fee of $7,416.75 which was necessary to prepare the damages models used by the Parties in their principled negotiations. A listing of the expenses incurred by each firm is attached to or included in their declarations, which are attached hereto as Exhibits 2-4. Plaintiffs' Counsel are entitled to reimbursement of litigation expenses from the settlement fund. 29 U.S.C § 216(b). Plaintiffs' Counsel's expenses, including process server fees, filing fees, mediation fees and damages expert fees, were reasonable and necessary to Counsel's representation of plaintiffs. *McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 390 (S.D.N.Y. 2017) (awarding expenses for experts, copying, electronic research, travel and printing, and other out-of-pocket expenses).

### IV.  Conclusion

For all of the above reasons, the Parties believe that this Settlement is a favorable outcome and will appropriately compensate Plaintiffs and Settlement Class Members for their FLSA and NYLL overtime pay and wage statement claims. Accordingly, the Parties respectfully submit that the Settlement, in its entirety, is fair and reasonable and should be approved by the Court.

November 9, 2021
Page 20

        Respectfully submitted,

        McGILLIVARY STEELE ELKIN LLP

        */s/ Molly A. Elkin*
        Molly A. Elkin

cc: All Counsel (via ECF)